```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                  :
IN RE ADELPHIA COMMUNICATIONS                     :
CORPORATION SECURITIES AND DERIVATIVE             :
LITIGATION                                        :
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X
THIS MEMORANDUM AND ORDER APPLIES TO              :    03 MD 1529 (LMM)
Nos. 03-CV-5750, 03-CV-5751                       :
                                                  :    MEMORANDUM
                                                  :    AND ORDER
                                                  :
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

McKENNA, D.J.,

      This action is part of a multi-district securities litigation pending before this Court. <u>In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.</u>, No. 03 MD 1529.

      In the instant case, the Los Angeles County Employees Retirement Association ("LACERA"), which is Plaintiff in the individual action No. 03-CV-5750, and the Franklin Strategic Income Funds and other associated funds ("Franklin"), which are Plaintiffs in the individual action No. 03-CV-5751, (collectively, "Plaintiffs"), have brought this action against Defendants John J. Rigas, Timothy J. Rigas, James P. Rigas, and Michael J. Rigas, all of whom were directors and/or senior officers of Adelphia Communications Corporation ("Adelphia") at all relevant times until May 2002. (LACERA Am. Compl. ¶¶ 17-21; Franklin Am. Compl. ¶¶ 16-20.) Plaintiffs have also named as defendants: outside directors of Adelphia (i.e. those directors who are not Rigases); Deloitte & Touche LLP; Banc of America Securities LLC; and Salomon Smith

1

Barney Holdings, Inc. (LACERA Am. Compl. ¶¶ 22-30; Franklin Am. Compl. ¶¶ 21-27.)[1]

Plaintiffs allege against the Rigas family directors: violations of Sections 10(b), 18, and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j, 78r, 78t(a); violations of Sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77o; allegations of common law fraud under California law; and violations of California Corporations Code §§ 1507, 25400(d), 25500, 25504, and 25504.1, all arising out of statements made by defendants regarding the financial condition of Adelphia. (LACERA Am. Compl. ¶¶ 339-581; Franklin Am. Compl. ¶¶ 315-467.) Plaintiffs now move for partial summary judgment against John J. Rigas and Timothy J. Rigas ("Defendants" or "the Rigases") on the claims of violations of Sections 10(b) and 18 of the Securities Exchange Act of 1934, violations of Section 11 of the Securities Act of 1933, and common law fraud (LACERA Am. Compl. Counts 1, 4, 8, 13; Franklin Am. Compl. Counts 1, 3, 5, 9), based on the criminal convictions of John and Timothy Rigas, see United States v. Rigas, No. 02 CR 1236, 2004 WL 2601084, at *1 (S.D.N.Y. Nov. 15, 2004) (listing judgments of conviction against John and Timothy Rigas after a jury rendered a verdict on July 8, 2004). (See also Special Verdict Form, Counts 3, 5, 8, 11-15, United States v. Rigas, No. 02 CR 1236 (S.D.N.Y. July 8, 2004).) For the reasons set forth below, the motion is granted in part and denied in part.

---

[1] The outside directors moved to dismiss plaintiffs' claims on statute of limitations grounds. This Court granted in part and denied in part that motion, granting plaintiffs leave to replead. In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., No. 03 MD 1529, 2005 WL 1981566 (S.D.N.Y. Aug. 16, 2005). Deloitte & Touche and Salomon Smith Barney also moved to dismiss plaintiffs' claims on statute of limitations grounds. This Court granted in part and denied in part that motion, granting plaintiffs leave to replead. In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., No. 03 MD 1529, 2005 WL 1679540 (S.D.N.Y. July 18, 2005), reconsid. denied, 2005 WL 1882281 (S.D.N.Y. Aug. 9, 2005).

**I.     Background**

LACERA is a California public pension fund providing retirement, disability, and death benefits to eligible Los Angeles County employees and their beneficiaries. (LACERA Am. Compl. ¶ 16.)  The Franklin Strategic Income Fund and other associated funds are affiliated with Franklin Templeton Investments, a large private investment management firm.  (Franklin Am. Compl. ¶ 15.)  Between May 1998 and June 2002, Plaintiffs collectively purchased approximately $381 million in debt securities issued by Adelphia and its subsidiary Arahova Communications Corporation; Plaintiffs held those securities until March 2002 (LACERA) and June 2002 (Franklin).  (LACERA Am. Compl. ¶¶ 1, 16; Franklin Am. Compl. ¶¶ 1, 14-15, 45-50.)  Plaintiffs allege they made these purchases based upon false and misleading information.  (LACERA Am. Compl. ¶¶ 1-2; Franklin Am. Compl. ¶¶ 1-2.)  At all relevant times, John J. Rigas was the founder, President, Chairman, Chief Executive Officer, and a director of Adelphia; his son, Timothy J. Rigas, was the Executive Vice President, Chief Financial Officer, Chief Accounting Officer, Treasurer, and a director of Adelphia.  (Franklin Am. Compl. ¶¶ 16-17.)

On March 27, 2002, Adelphia revealed that billions of dollars in off-balance sheet debt had not been disclosed in its prior filings with the Securities and Exchange Commission ("SEC") or related financial reports.  Subsequently, Adelphia made other announcements revealing additional problems, all of which caused the trading price of Adelphia's securities to drop precipitously.  (Franklin Am. Compl. ¶¶ 8-9, 95-149; Indictment ¶¶ 44-197, United States v. Rigas, 02 CR 1236 (S.D.N.Y. Sept. 23, 2002).)

Plaintiffs allege that the Rigases made numerous false or misleading public statements concerning Adelphia's financial condition, including statements or omissions about its off-balance sheet debt, leverage, operating performance, compliance with debt covenants, and related party transactions that were included in press releases, Form 10-K, 8-K, and 10-Q filings, proxy statements, Registration Statements, and related Prospectuses. (Franklin Am. Compl. ¶¶ 51-149.)[2]

Plaintiffs claim they overpaid for Adelphia securities, as the securities' prices were inflated due to Defendants' failure to disclose material information; when Defendants revealed this previously undisclosed material information, the price of the securities dropped sharply, resulting in significant financial loss to Plaintiffs. (LACERA Am. Compl. ¶¶ 8-9; Franklin Am. Compl. ¶¶ 8-9.)

The United States Attorney for the Southern District of New York initiated a criminal action against John J. Rigas, Timothy J. Rigas, Michael J. Rigas, James R. Brown, and Michael C. Mulcahey for: (1) conspiracy to commit wire fraud, commit bank fraud, commit securities fraud, make false and misleading statements in SEC filings, and falsify company records; (2) securities violations under Section 10(b); (3) wire fraud; and (4) bank fraud – all based on facts almost identical to those alleged in the Complaints at hand. See United States v. Rigas, 258 F. Supp. 2d 299, 301-03 (S.D.N.Y. 2003). (See also Indictment ¶¶ 198-211). After a jury trial, John and Timothy Rigas were convicted of conspiracy to: commit bank fraud, commit securities fraud, make or cause false statements to be made in SEC filings, and falsify Adelphia's records.

---

[2] A complete recitation of the allegations at issue is unnecessary, as they are substantially similar to those contained in the Consolidated Class Action Complaint discussed in this Court's May 27, 2005 Memorandum and Order. In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., No. 03 MD 1529, 2005 WL 1278544, at *1-4. (S.D.N.Y. May 31, 2005).

(Special Verdict Form, Count 1). They were also convicted of securities fraud in connection with the common stock of Adelphia. (Id., Count 2.) In addition, John and Timothy Rigas were convicted of 14 distinct counts of securities fraud in connection with specific debt securities, including the following which were purchased by Plaintiffs: Adelphia 9.875% Senior Notes due March 1, 2005; Adelphia 9.875% Senior Notes due March 1, 2007; Adelphia 8.375% Senior Notes due February 1, 2008; Adelphia 7.75% Senior Notes due January 15, 2009; Adelphia 7.875% Senior Notes due May 1, 2009; Adelphia 9.375% Senior Notes due November 15, 2009; Adelphia 10.875% Senior Notes due October 1, 2010; and Adelphia 10.25% Senior Notes due June 15, 2001. (Id., Counts 3, 5, 8, 11-15.) They were also convicted on counts of bank fraud. (Id., Counts 22-23.) The convictions were entered as final judgments on June 30, 2005.[3]

Plaintiffs argue that this Court should grant partial summary judgment against the Rigases, based on their criminal convictions, on the Section 10(b), Section 11, Section 18, and common law fraud claims. Plaintiffs do not seek summary judgment on the issue of damages.

## II. Standard

### A. Summary Judgment

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S.

---

[3] Criminal defendants Michael J. Rigas and Michael C. Mulcahey were acquitted on all counts. (Special Verdict Form, Counts 1-23.)

317, 322 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party establishes a prima facie case demonstrating the absence of a genuine issue of material fact, the nonmoving party has the burden of presenting "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Alemenas, 143 F.3d 105, 114 (2d Cir. 1998) (citations omitted). A court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985).

### B. Collateral Estoppel

Plaintiffs seek to use Defendants' criminal convictions to invoke offensive collateral estoppel and prevent Defendants from relitigating their liability in this civil case. Collateral estoppel bars the "relitigation of an issue of law or fact that was raised, litigated, and actually decided by a judgment in a prior proceeding between the parties, if the determination of that issue was essential to the judgment, regardless of whether or not the two proceedings are based on the same claim." N.L.R.B. v. United Tech. Corp., 706 F.2d 1254, 1260 (2d Cir. 1983) (citations omitted). "Because mutuality of estoppel is no longer an absolute requirement under federal law, a party other than the Government may assert collateral estoppel based on a criminal conviction. Gelb v. Royal Globe Ins. Co.,

6

798 F.2d 38, 43 (2d Cir. 1986) (citations omitted). The doctrine is designed to "promote judicial economy." Whimsicality, Inc. v. Battat, 27 F. Supp. 2d 456, 462 (S.D.N.Y. 1998) (citations omitted).

To apply offensive collateral estoppel, a court must find that "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." United States v. Hussein, 178 F.3d 125, 129 (2d Cir. 1999) (quotations and citations omitted); see Gelb, 798 F.2d at 44. Trial courts have "broad discretion" in applying the doctrine of offensive collateral estoppel. Parklane Hosiery Co. v. Shore, 439 U.S. 332, 331 (1979).

"It is settled that a party in a civil case may be precluded from relitigating issues adjudicated in a prior criminal proceeding . . . ." Mishkin v. Ageloff, 299 F. Supp. 2d 249, 253 (S.D.N.Y. 2004) (citing United States v. Podell, 572 F.2d 31, 35 (2d Cir. 1978)) (other citations omitted). "In a civil case, it is appropriate to estop a party from relitigating issues actually and necessarily decided as part of a prior criminal judgment and conviction, in part because '[t]he government bears a higher burden of proof in the criminal than in the civil context.'" SEC v. Namer, No. 97 Civ. 2085, 2004 WL 2199471, at *4 (S.D.N.Y. Sept. 30, 2004) (quoting Gelb, 798 F.2d at 43).

### III. Discussion

Plaintiffs argue that the Rigases' convictions alone suffice to establish liability and that Plaintiffs should be awarded partial summary judgment on their Section 10(b), Section 11, Section 18, and common law fraud claims on all elements except damages.

7

The first inquiry, however, is deciding whether collateral estoppel applies to Plaintiffs' civil claims.

### A. Use of Collateral Estoppel

As previously stated, in order to apply collateral estoppel to Plaintiffs' civil claims, this Court must find that: (1) the issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and actually decided; (3) defendants had a full and fair opportunity to litigate in the prior proceeding; and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits. Gelb, 798 F.2d at 44.

The court will first address the last three Gelb prongs, as Plaintiffs have clearly met those. Under prong two of Gelb, there can be no question that United States v. Rigas actually litigated and actually decided the facts necessary to reach a verdict on the Section 10(b) claims as they pertained to the Rigases' misrepresentations about Adelphia's financial condition. Similarly, under prong three, there is no question as to whether the Rigases had anything other than "a full and fair opportunity" to litigate the issues in the criminal case. The Rigases do not argue that they were deprived of any opportunity to vigorously put forth a defense in the criminal action, which is "presume[d] to have taken] place in accord with the procedural and constitutional safeguards accorded to criminal defendants in United States District Courts." See Namer, 2004 WL 2199471, at *5. As to the final prong, Defendants argue that because both John and Timothy Rigas have filed appeals of their criminal convictions, their convictions are not final. (Defs.' Opp'n 18.) However, "the pendency of a criminal appeal generally does not deprive a judgment of its preclusive effect." United States v. Int'l Bhd. of Teamsters, 905 F.2d

610, 621 (2d Cir. 1990) (quotations and citation omitted); see also Petrella v. Siegel, 843 F.2d 87, 90 (2d Cir. 1988); Namer, 2004 WL 2199471, at *8 (applying collateral estoppel despite pending appeal).[4] This same analysis of the last three prongs applies to application of collateral estoppel to all civil claims asserted here by Plaintiffs.

The inquiry as to the first Gelb prong is more complex. Under the first prong, the Court must first decide what findings were actually made by the criminal jury. Plaintiffs argue that the Court should look to the criminal indictment to assess which issues were decided in the criminal case (Pls.' Reply 2-5), and Defendants argue the Court should look only to the Special Verdict Form (Defs.' Opp'n 8-13). This Court finds both positions incorrect.

The allegations in the Rigases' criminal indictment mirror those in the LACERA and Franklin Amended Complaints. The Rigases were charged with 15 separate counts of securities fraud, one for each class of Adelphia debt securities (Indictment, Counts 2-16), and Plaintiffs purchased 8 of these classes (LACERA Am. Compl. ¶ 16; Franklin Am. Compl. ¶ 15). In reaching their verdict, the jury expressly found that in connection with the purchase or sale of each of those securities, John and Timothy Rigas "employed a device, scheme or artifice to defraud," "made an untrue statement of a material fact or

---

[4] Defendants argue that this Court should exercise its discretion and deny the application of collateral estoppel due to principles of fairness and equity. First, Defendants argue that judicial economy would not be promoted by the application of collateral estoppel only as against John and Timothy Rigas and not against the other Rigases because the allegations against all of the Rigases are identical, and during discovery the remaining defendants will seek the same discovery and evidence regardless of whether partial summary judgment is awarded here. (Defs.' Opp'n at 17-18.) Although Defendants are correct that discovery will have to take place regardless, Defendants miss the point that judicial economy is promoted any time a defendant or issue is removed from a case. Second, Defendants argue that this Court should deny collateral estoppel due to the risk that that the criminal jury may have been wrong. Defendants cite to an Ohio state court case to support their argument. (Id. at 18-19 (citing Phillips v. Rayburn, 113 Ohio App. 3d 374 (Ohio App. 1996))). That decision itself admits, however, that it is "contrary to the trend in federal courts." See Phillips, 113 Ohio App. 3d. at 381. Federal courts routinely apply collateral estoppel based on jury verdicts. See, e.g., Namer, 2004 WL 2199471.

9

omitted to state a material fact which made what was said under the circumstances, misleading," and "engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller." (Special Verdict Form, Counts 2-16.) These are all violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5, 17 C.F.R. § 240.10b-5. (See id.) The Special Verdict Form did not ask the jury whether the government had proven its case with respect to each and every alleged misrepresentation set forth in the Indictment. (See id.) Neither did it ask the jury to identify the particular misrepresentation, omission, or deceptive conduct that served as the basis for each of the counts. Defendants argue that as such, the Verdict Form only demonstrates that the jury found that John and Timothy Rigas made only one misleading statement of material fact with respect to each of the identified securities, and that it is impossible to know which of the alleged conduct or misrepresentations contained in the indictment served as the basis for the securities fraud convictions. (Defs.' Opp'n 10.)

When applying collateral estoppel, a court must be "mindful of the reality that the basis upon which the . . . verdict was reached usually cannot be demonstrated with certainty." United States v. Clark, 613 F.2d 391, 402 (2d Cir. 1979) (citation omitted). Often, as here, a criminal verdict does not indicate which of the allegations charged in the indictment were actually found to have been engaged in, beyond a reasonable doubt, by the defendants, "since all of the acts charged need not be proved for conviction." See Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 569 (1951).

"Under these circumstances what was decided by the criminal judgment must be determined by the trial judge hearing the [civil] suit, upon an examination of the record,

including the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the courts." Id.; see Ashe v. Swenson, 397 U.S. 436, 444 (1970). The Court's "task is to determine 'whether a rational jury could have grounded its verdict upon an issue other than that which [Plaintiffs] seek to foreclose from consideration.'" United States v. Russotti, 717 F.2d 27, 35 (2d Cir. 1983) (quoting Ashe, 397 U.S. at 444). This inquiry must be conducted "in a practical frame and viewed with an eye to all the circumstances of the proceedings. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings . . . ." Ashe, 397 U.S. at 444 (quotations and citation omitted). A court should not "strain[] to postulate hypertechnical and unrealistic grounds on which the jury could conceivably have rested its conclusions." United States v. Mespoulede, 597 F.2d 329, 333 (2d Cir. 1979) (quotations and citation omitted). Using these principles, courts in this district have repeatedly looked beyond indictments when applying collateral estoppel. See, e.g., Everest, 466 F. Supp. 167, 173 (S.D.N.Y. 1979) (examining record in criminal case to apply collateral estoppel to SEC's civil claims based on defendant's previous criminal conviction); Namer, 2004 WL 2199471, at *5-7 (looking at indictment to determine that allegations in civil complaint were identical to those decided in criminal case).

Here, based on a review of the trial record, court opinions, Indictment, Special Verdict Form, and Jury Instructions, this Court finds that the most reasonable conclusion is that the jury found that the Rigases engaged in an ongoing and pervasive fraudulent scheme, in furtherance of which the Rigases made numerous material misrepresentations and omissions and engaged in other fraudulent conduct. The criminal case "center[ed] on

an approximately three-year period in which Defendants allegedly engaged in a pattern of criminal conduct designed to conceal or minimize Adelphia's increasingly precarious financial condition and the Rigas family's improper use of Adelphia funds for personal purposes." United States v. Rigas, 258 F. Supp. 2d at 302-03. By its very nature, concealment of the information rendered false all of Adelphia's financial statements, SEC filings, and other public statements relating to its financial condition during the three-year period alleged in both the Plaintiffs' Amended Complaints and the Indictment. It would be unrealistic for this Court to find that the Rigases' convictions on 15 counts of securities fraud with the purchase or sale of 15 different securities were based on a finding of only one single false statement in one single document.

The above analysis only determines the first portion of the first Gelb prong, i.e. what the jury found in the criminal case. The second portion, i.e. whether what the criminal jury found is identical to the facts alleged in the individual civil claims, must be addressed on a case by case basis for each civil claim, which the Court does in the following section.

**B.    Application to Individual Civil Claims**

    **1.    Section 10(b) Claim**

By proving a criminal violation of Section 10(b) of the 1934 Securities Exchange Act and Rule 10b-5 against the Rigases at trial, the government has proven beyond a reasonable doubt that the Rigases: "(1) made a material misrepresentation or material omission as to which [they] had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." SEC v. Monarch

Funding Corp., 192 F. 3d 295, 308 (2d Cir. 1999) (citation omitted).[5]

To establish civil liability under Section 10(b) and Rule 10b-5, Plaintiffs must prove, by a preponderance of the evidence, that Defendants: "'(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury.'" In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., 398 F. Supp. 2d 244, 248 (quoting In re IBM Corp. Sec. Litig., 163 F. 3d 102, 106 (2d Cir. 1998)). The only elements for civil liability not proven in the Rigases' criminal trial are Plaintiffs' reliance and causation. These issues were neither litigated nor posed to the jury.

---

[5] Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, reads in relevant portion:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange —
>
> . . .
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b-5, 17 C.F.R. § 240.10b-5, reads in relevant portion:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> . . .
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Plaintiffs acknowledge that a finding of reliance cannot be based on the criminal conviction (Pls.' Mem. 4-5), but argue that because their 10(b) claim includes a claim that Adelphia's financial statements omitted material facts necessary to make the statements not misleading, they need not prove reliance (Pls.' Mem. 11-12; Pls.' Reply 6-10). "Reliance is established by a rebuttable presumption which exists in cases, such as the instant one, in which defendant[s have] failed to disclose material information to [plaintiffs] . . . ." In re Ivan F. Boesky Sec. Litig., 848 F. Supp. 1119, 1124, 1125 (S.D.N.Y. 1994) (citing Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-54 (1972)). The 10(b) violations established by the Rigases' criminal convictions, and those alleged by Plaintiffs, indisputably derived in part from the Rigases' failure to disclose material information. (LACERA Am. Compl. ¶¶ 63-115; Franklin Am. Compl. ¶¶ 51-96; Indictment ¶¶ 44-197.) Thus, there is a rebuttable presumption that Plaintiffs relied on Defendants' nondisclosure and omissions.

In addition, reliance is presumed where a plaintiff is the purchaser of a security and has demonstrated a "fraud on the market." Basic, Inc. v. Levinson, 485 U.S. 224, 243 (1988). Courts regularly apply the "fraud on the market" doctrine when deciding motions for summary judgment. See, e.g., In re Ivan F. Boesky Sec. Litig., 848 F. Supp. at 1124-26; In re Gaming Lottery Sec. Litig., No. 96 Civ 5567, 2001 WL 204219, at *17 (S.D.N.Y. Mar. 1, 2001). "The fraud on the market theory holds that in an open and developed securities market, the price of a company's stock is determined by the available information regarding the company and its business [and that m]isleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements." In re Adelphia, 398 F. Supp. 2d at 256 (quotations

and citation omitted). "The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations." Basic, 485 U.S. at 241-42 (quotations and citation omitted).

In the case at hand, more than $6.9 billion in Adelphia debt securities, and those of its subsidiaries, were "registered with the SEC and were traded in the over-the-counter market for such securities by dealers in New York, New York and elsewhere." (Indictment ¶ 37.) At all relevant times, Moody's Investors Services, Inc. and Standard & Poor's Ratings Services "periodically published their credit ratings and analyses of Adelphia and its debt securities, which were routinely relied upon by investors in connection with the purchase and sale of Adelphia securities." (Id. ¶ 39.) As the market for Adelphia debt securities was efficient during the relevant period, Plaintiffs are entitled to a presumption of reliance. See In re Gaming, 2001 WL 204219, at *17 (citing Basic, 485 U.S. at 243).

Defendants have furnished no evidence to rebut these presumptions. However, Defendants argue that Plaintiffs' motion should be denied as premature pending the completion of required discovery. (Defs.' Opp'n 4-7.) Defendants contend that in order to adequately respond to Plaintiffs' motion they need discovery on the following: the timing and amount of Plaintiffs' alleged securities purchase, entities that comprise Plaintiffs, as well as the issues of reliance and loss causation. (Defs.' Opp'n 4-7.) This Court agrees.

This Court has stayed discovery pursuant to the Private Securities Litigation Reform Act, pending disposition of the numerous motions to dismiss filed by various

15

defendants. Order, <u>In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.</u>, No. 03 MD 1529 (Dec. 15, 2003). Due to the stay, Defendants have no ability to rebut the presumptions of reliance, as all documents and information attesting to Plaintiffs' reliance are within the exclusive control of Plaintiffs. It would be fundamentally unfair to find that Defendants did not rebut the presumptions without giving them an opportunity to find evidence to rebut them.[6]

Thus, Plaintiffs are granted summary judgment as to the first three elements of their 10(b) claim, and denied summary judgment as to the last two elements. This Court grants Plaintiffs leave to renew their motion as to the element of reliance after Defendants have had a full opportunity to take discovery and can respond to Plaintiffs' motion based on the fruits of discovery.[7]

### 2. Section 11 Claim

Section 11 of the 1933 Securities Act allows purchasers of a registered security to sue certain enumerated parties when false or misleading information is included in a registration statement.[8] "Under Section 11, a plaintiff need not prove that the defendants

---

[6] Plaintiffs argue that they have sufficiently proven reliance through the affidavits, annexed to their Memorandum of Law, that attest to their reliance upon Adelphia's annual and quarterly financial statements, as contained in the Registration Statements and related prospectuses, Forms 10-K, 10-Q, and 8-K, proxy statements, and press releases. (Pls.' Mem. 12 & n.8 (citing Banks Aff., Schweitzer Aff., Esser Aff., Takaha Aff.).) However, this Court will not rely on those affidavits until Defendants have had an opportunity to take discovery.

[7] The Court will not address the final element of plaintiffs 10(b) claim – that plaintiff's reliance was the proximate cause of their injury – as the issue of Plaintiffs' reliance remains outstanding.

[8] Section 11, 15 U.S.C. § 77k(a) provides in relevant part:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew

acted with scienter; 'he need only show a material misstatement or omission . . . .'" In re Initial Public Offering Sec. Litig., 241 F. Supp. 2d 281, 336 (S.D.N.Y. 2003) (quoting Herman & MacLean v. Huddleston, 459 U.S. 375, 382 (1983)). Section 11 "'places a relatively minimal burden on a plaintiff.'" Id. (quoting Herman, 459 U.S. at 382). A reasonable reading of the Rigases' convictions establishes that most of Adelphia's financial statements for 1999 through 2002 were materially false and misleading. These materially false and misleading financial statements were incorporated into the respective Registration Statements at issue here. The jury was presented evidence of an ongoing conspiracy by the Rigases, which included these misstatements. Additionally, as the Rigases are both signatories to the registration statements at issue and directors of Adelphia, they are within the parties enumerated in Section 11 against whom a plaintiff can bring a Section 11 claim.

Accordingly, Plaintiffs are entitled to summary judgment finding the Rigases liable under Section 11.

### 3. Section 18 Claim

To establish civil liability under Section 18 of the 1934 Securities Exchange Act, Plaintiffs must prove that: "(1) a false or misleading statement was contained in a document filed pursuant to the Exchange Act (or any rule or regulation thereunder); (2) defendant[s] made or caused to be made the false or misleading statement; (3) plaintiff[s]

---

> of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue--
> 
> (1) every person who signed the registration statement;
> 
> (2) every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted .
> . . .

relied on the false statement; and (4) the reliance caused loss to the plaintiff[s]." In re Alstom SA Sec. Litig., 406 F. Supp. 2d 433, 478 (S.D.N.Y. 2005) (citation omitted).[9]

In this case, a reasonable reading of the Rigases' convictions establishes that most of Adelphia's financial statements for 1999 through 2002 were materially false and misleading. These materially false and misleading financial statements were incorporated into Adelphia's Form 10-Ks, which were filed with the SEC during the relevant time period.

Section 18 requires actual, or what has sometimes been referred to as "eyeball," reliance. Id. at 479 (citing Heit v. Weitzen, 402 F.2d 909, 916 (2d Cir. 1968)) (other citations omitted). Reliance cannot be presumed as in a Section 10(b) claim; a plaintiff must actually have read and relied on the filed document. In re Alstom, 406 F. Supp. 2d at 479 (citing Heit, 402 F.2d at 916) (other citations omitted). As per the above discussion regarding Plaintiffs' 10(b) claim, the Court will not enter summary judgment until Defendants have had an opportunity to take discovery regarding the issue of

---

[9] Section 11, 15 U.S.C. § 78r(a) provides in relevant part:

> Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant.

reliance and can respond to Plaintiffs' motion based on what is learned in discovery. Plaintiffs are given leave to renew their motion once this discovery has taken place.

Thus, summary judgment is granted on behalf of Plaintiffs on the first two elements of the Section 18 claim, and denied on the last two elements.

### 4. Common Law Fraud

To establish civil liability for common law fraud under California law,[10] a plaintiff must show: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 990 (Cal. 2004) (citation omitted). These are the same basic elements of a Section 10(b) claim. Cf. Mishkin, 299 F. Supp. 2d at 254 (finding convictions under section 10(b) establish elements of common law fraud claim under New York law).

As per the discussion regarding Plaintiffs' 10(b) claim, Plaintiffs are granted summary judgment as to the first three elements of their common law fraud claim and are given leave to renew their motion once discovery has taken place.

## IV. Conclusion

For the reasons stated above, Plaintiffs' motion for summary judgment is granted

---

[10] Defendants do not contest that California law applies here. (See Defs.' Opp'n 15-16.)

in part and denied in part, with leave to renew their motion as stated above.

So Ordered.

Dated: August 22, 2005
   New York, New York

                                        _____
                                        Lawrence M. McKenna
                                        U.S.D.J.